# United States District Court
### EASTERN DISTRICT OF TEXAS
#### SHERMAN DIVISION

| | | |
|---|---|---|
| OASIS RESEARCH, LLC | § | |
| | § | |
| v. | § | Cause No. 4:12-CV-526 |
| | § | Judge Mazzant |
| EMC CORP., DECHO CORP., and | § | |
| IOMEGA CORP. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants EMC Corp., Decho Corp, and Iomega Corp.'s Motion to Dismiss for Misjoinder or, In the Alternative, to Sever and Transfer Claims to the United States District Court for the District of Utah (Dkt. #108).[1] Having considered the relevant pleadings, the Court is of the opinion that Defendants' motion should be denied.

## BACKGROUND

Plaintiff Oasis Research, LLC ("Plaintiff") is a Delaware limited liability company with its previous principal place of business in Marshall, Texas (Dkt. #253 at 2). Plaintiff's current mailing address is in Fort Worth, Texas. *Id*. Defendant EMC Corporation ("EMC") is incorporated in Massachusetts and has its principal place of business in Hopkinton, Massachusetts (Dkt. #283 at 1; *see also* Dkt. #404 at 1). Defendant Decho Corporation ("Decho") is a wholly owned subsidiary of EMC, is incorporated in Delaware, and has a principal place of business in Seattle, Washington. *Id*. at 2. Defendant Iomega Corporation ("Iomega") is a wholly owned subsidiary of EMC, is incorporated in Delaware, and has a principal place of business in San Diego, California. *Id*.

---

[1] The Court has addressed Defendants' motion to sever in a separate memorandum opinion and order (Dkt. #435) issued on August 15, 2012, and will only consider Defendants' motion to transfer in this memorandum opinion and order.

1

Plaintiff asserts that the EMC entities infringe U.S. Patent Nos. 5,771,354 (the "'354 Patent"), 5,901,228 (the "'228 Patent"), 6,411,943 (the "'943 Patent"), and 7,080,051 (the "'051 Patent"), through their online backup/storage services offered by its "Mozy" branded services at its website "MozyHome" and "MozyPro." (Dkt. #253 at 7). Plaintiff also accuses products "iStorage" and "Atmos." *Id*.

On May 23, 2011, the undersigned entered a Report and Recommendation denying Defendants' motion to sever and transfer (Dkt. #108; Dkt. #204). After considering the objections, United States District Judge Michael H. Schneider adopted the Report and Recommendation of the United States Magistrate Judge (Dkt. #246). On February 17, 2012, this case was assigned to the undersigned by consent of the parties for all further proceedings (Dkt. #352).

On September 7, 2011, Defendants EMC Corp., Decho Corp., and Iomega Corp. (collectively, "EMC" or the "EMC entities") petitioned the Federal Circuit for a writ of mandamus vacating the July 25, 2011 order of the District Court adopting the undersigned's recommendations. Defendants Carbonite, Inc. ("Carbonite"), Iron Mountain, Inc. and Iron Mountain Information Management, Inc. (collectively "Iron Mountain"), Go Daddy.com, Inc. ("Go Daddy"), and Pro Softnet, Inc. ("Pro Softnet") joined in EMC's petition. On May 4, 2012, the Federal Circuit granted the writ of mandamus in part, vacating the district court's order denying the motions to sever and transfer, and directing the district court to reconsider those motions in light of the correct test. *In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012).

In response to the Federal Circuit's writ of mandamus, the Court requested the parties submit a joint proposed briefing schedule, which was adopted by the Court on May 21, 2012 (Dkt. #371). Defendants referred the Court to their original Motion to Dismiss for Misjoinder or,

In the Alternative, to Sever and Transfer Claims to the United States District Court for the District of Utah (Dkt. #108). On June 8, 2012, Plaintiff filed its Opposition to Defendants' Motions to Sever and Transfer (Dkt. #378). On June 25, 2012, Defendants filed their reply (Dkt. #391, #392, #393, #394, #395). On July 9, 2012, Plaintiff filed its sur-reply (Dkt. #398).

## LEGAL STANDARD

A district court may transfer any civil case "for the convenience of parties and witnesses, in the interest of justice...to another other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I").

Once that threshold inquiry is met, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II"); *In re Nintendo*, 589 F.3d at 1198. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the

application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *TS Tech,* 551 F.3d at 1319. The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10; *TS Tech*, 551 F.3d at 1320; *In re Nintendo*, 589 F.3d at 1200.

**ANALYSIS**

Defendants request to be transferred to the District of Utah. The first question the Court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have been filed originally in the destination venue. *Volkswagen II*, 545 F.3d at 312. Under 28 U.S.C. § 1400(b), venue in a patent infringement action is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." The judicial district where a defendant resides includes the state where the defendant is incorporated. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). The Court notes that none of the Defendants are incorporated in Utah, nor have their principal place of business in Utah. However, Defendants alleged infringing activity occurred in Pleasant Grove, Utah, where Decho Corporation, doing business as Mozy, has established its principal place of business. (Dkt. #109 at 2). The patent venue provision states venue may be proper where the defendant has committed acts of infringement and has a regular and established place of business. In this case, it appears that the accused Mozy products are located in Utah, and day-to-day operations for

these products occur in Utah. *Id.* Plaintiff does not dispute these facts. Therefore, the Court finds that this suit could have been filed in the District of Utah.

**A. Private Interest Factors**

*(1) The Relative Ease of Access to Sources of Proof*

"Courts analyze this factor in light of the distance that documents, or other evidence must be transported from their existing location to the trial venue." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (citing *Volkswagen II*, 545 F.3d at 316). This factor will rely on which party has a greater volume of documents relevant to the litigation, and their presumed location in relation to the transferee and transferor venues. *Id.* (citations omitted). Documents that have been moved in anticipation of litigation should not be considered. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).

The EMC entities argue that "all Mozy documents are stored in a central location in Mozy's IT infrastructure in Pleasant Grove, Utah" (Dkt. #108 at 10). Documents related to Atmos Online and iStorage primarily are located in Massachusetts, New York, and Washington D.C. *Id.*

Plaintiff contends that documents from Christopher Crawford, the named inventor on the patents-in-suit are located in Texas with Crawford's counsel; however, the Court will not consider the location of these documents in its analysis. *See In re Hoffman-La Roche,* 587 F.3d at 1336-37 (stating documents that have been moved in anticipation of litigation should not be considered). Plaintiff also asserts that relevant documents with respect to AT&T's connection with the EMC entities are located in Texas (Dkt. #378 at 13). However, the AT&T Defendants have already been dismissed from this litigation, and the Court will not consider the location of documents relevant to AT&T in its transfer analysis as to these Defendants.

5

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotations omitted). Based on the information before the Court, it appears that Defendant's documents are located in Utah, Massachusetts, New York, and Washington D.C. While transfer to Utah would make access to those documents located in Utah more convenient, there are other sources of proof for Defendants located around the nation that would not be more convenient in either location. Therefore, the Court finds this factor is neutral in regards to transfer.

*(2) The Availability of Compulsory Process*

Federal Rule of Civil Procedure 45(b)(2) allows a federal court to compel a witness' attendance at a trial or hearing by subpoena; however, the Court's subpoena power is limited by Federal Rule of Civil Procedure 45(c)(3), to those witnesses who work or reside less than 100 miles from the courthouse. *See Volkswagen II*, 545 F.3d at 316.

The EMC entities argue that the most relevant witnesses for the Mozy products are located in Utah (Dkt. #108 at 9). Specifically, Mozy witnesses include: (1) Vance Checketts, Vice President of Operations for Mozy; (2) Patrick Bozeman, Chief Architect for Mozy; (3) Dave Robinson, Senior Director of Marketing for Mozy; and (4) Keith Tanaka, Senior Director of Inside Sales at Mozy. *Id*. EMC witnesses for Atmos Online and iStorage are located in Massachusetts and New York. *Id*. Non-party witnesses for the EMC entities include Josh Coates, founder of Mozy, who resides in Utah. *Id*. at 10. Mr. Crawford, the named inventor, resides in Colorado, the prosecuting attorneys for the patents reside in Arlington, Virginia, and personnel at SwapDrive in Washington, D.C. may also be relevant non-party witnesses. *Id*. In

addition, Defendant argues that new witnesses that may be required to testify include Don Atwood, Charles Campos, Terri Todd, and Don Doss (Dkt. #391 at 4). Atwood, Campos, and Doss live in California, and Todd lives in Colorado. *Id.* Defendant argues that none of these witnesses can be compelled to testify in Sherman, Texas; however, they also do not argue that these witnesses can be compelled to testify in Utah.

First, Plaintiff contends that of the over forty (40) third party witnesses identified on EMC's initial disclosures, none are located within the subpoena power of the District of Utah (Dkt. #378 at 13). Further, Plaintiff argues that there are two (2) third-party witnesses located within the subpoena power of the Eastern District of Texas. *Id.* Finally, Plaintiff contends that there are multiple third-party witnesses that have been subpoenaed for both documents and testimony located at a variety of locations across the United States. *Id.* It is unclear which of these witnesses will be required to appear for trial; however, the Court notes that these witnesses are alleged to reside in many states in the United States.

Based on this information, the Court determines that this factor weighs in favor of neither jurisdiction and finds that this factor is neutral as to transfer. It appears that the witnesses in this case reside in a variety of locations across the nation, which does not favor transfer to the District of Utah nor the Eastern District of Texas. While it does appear that there is one third party witness in Utah, there are two located in the Eastern District of Texas. Further, Defendants' witnesses themselves are located around the nation. Therefore, the Court finds this factor is neutral as to transfer.

*(3) Cost of Attendance for Willing Witnesses*

The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for

trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. Where witnesses are from widely scattered locations, a trial court should not consider its "central location... in the absence of witnesses within the plaintiff's choice of venue." *Genentech*, 566 F.3d at 1344.

EMC argues that for those witnesses who are willing to testify, Utah is more convenient that the Eastern District of Texas (Dkt. #391 at 5). EMC argues that all the Mozy witnesses indicated above are located in Utah. Further, EMC contends that it is more convenient to travel from California to Utah, than from California to Sherman. In addition, EMC argues that Mr. Crawford is closer to Utah than Sherman. It is unclear on what basis EMC makes this argument.

Plaintiff argues that its primary decision-maker, Gordon Jumonville resides in Texas, and that this district is more convenient that the proposed transfer district (Dkt. #378 at 14). In addition, Plaintiff contends that the inventor, Mr. Crawford, has agreed that this district is convenient for him. *Id*.

Based on the evidence before the Court, there are four potential witnesses in Utah, one in Texas, one in Colorado, one in Virginia, and other unidentified witnesses in Massachusetts, New York, California, and other locations. Regardless of whether trial occurs in the Eastern District of Texas or the District of Utah, many of these witnesses would be required to travel. Therefore, the Court finds that this factor is neutral as to transfer, based on the location of the various witnesses across the United States.

*(4) All Other Practical Problems*

Plaintiff argues that other practical problems include those based on judicial economy, particularly the existence of duplicative suits and transfer to another district when this Court has

already expended significant resources in hiring a technical advisor, conducting a *Markman* hearing, and reviewing the parties' summary judgment motions. Plaintiff notes that it does not make sense to transfer at this stage of the litigation, especially given the consideration that the parties and the Court have already expended significant resources negotiating issues of scheduling, discovery, and protective orders (Dkt. #398 at 4). Transfer at this stage of the proceedings would duplicate these efforts. In addition, there are several witnesses involved in the litigation who will testify to issues common to all Defendants. *Id*. at 4. Transfer would require these parties to travel across the nation several times to testify in these proceedings. Therefore, the Court agrees that the conservation of resources and avoiding duplicative suits in the interest of judicial economy weighs heavily against transfer.

**B. Public Interest Factors**

   *(1) The Administrative Difficulties Flowing From Court Congestion*

The first public interest factor is court congestion. Defendants do not address this factor (Dkt. #108; Dkt. #391 at 5). Plaintiff argues that this factor does not weigh strongly for or against transfer (Dkt. #378 at 15). Based on the arguments of the parties, the Court finds this factor is neutral.

   *(2) The Local Interest in Having Localized Interests Decided at Home*

Traditionally, the location of the alleged injury is an important consideration in determining how to weigh this factor. *TS Tech*, 551 F.3d at 1321. However, in a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id*. Local interest may also be determined when a district is home to a party because the suit may call into question the

reputation of individuals that work and conduct business in the community. *Hoffman-La Roche*, 587 F.3d at 1336.

EMC argues that the District of Utah is home to Mozy's principal place of business, and that the day-to-day operations involving the Mozy products all take place within that District (Dtk. #108 at 12). Therefore, the District of Utah clearly has a local interest in having the proceedings determined there. The Court agrees. The Eastern District of Texas is connected to this litigation only in that Defendants' services and products are available nationwide, and thus are available in this district. Where all the relevant events occurred in the transferee district, and the only connection to the original district was that products of the same type were sold there, the transferee district's localized interest in seeing the case decided there significantly favors transfer. *Volkswagen II*, 545 F.3d at 317. Further, because the sale of infringing products in the forum "could apply virtually to any judicial district or division in the United States," to rely on that as a basis to find that the district had a localized interest in the controversy "stretches logic." *TS Tech*, 551 F.3d at 1321. Therefore, this factor weighs in favor of transfer.

*(3) The Familiarity of the Forum with the Law that Will Govern the Case and (4) The Avoidance of Unnecessary Problems of Conflict of Laws*

The parties agree that these two factors are neutral or inapplicable as to transfer (Dkt. #108 at 12; Dkt. #378 at 15; Dkt. #391 at 5). The Court agrees and finds these factors to be neutral.

**C. Conclusion**

The Court finds that six (6) of the private and public interest factors are neutral, one (1) factor weighs in favor of transfer, and one (1) factor weighs against transfer.

Plaintiff argues, and the Court agrees, that the factor of judicial economy weighs heavily against transfer in this case. If this Court were to transfer this litigation to Utah, another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues in this case. Further, this Court has already set an upcoming trial date for March of 2013 for this case, and its related cases. To transfer this litigation at this stage of the proceedings might cause improper delay and unfair prejudice to Plaintiff.

The Court may deny motions to transfer based on judicial economy alone. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) (holding that district court may properly deny § 1404(a) transfer based on judicial economy even "when all of the convenience factors clearly favor transfer."); *In re Google,* 412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective."); *Centre One v. Vonage Holdings, Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (Davis, C.J.) (holding that the defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora."); *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."). In this case, not only have EMC, Decho, and Iomega failed to meet their burden to show that the District of Utah is a "clearly more convenient forum" for this

litigation, but the burden that would be imposed on the federal court system by the transfer of this case, as well as the efficient administration of court proceedings and conserving judicial resources weighs heavily against transfer.

## CONCLUSION

Based on the foregoing, the Court finds Defendants EMC Corp., Decho Corp, and Iomega Corp.'s Motion to Dismiss for Misjoinder or, In the Alternative, to Sever and Transfer Claims to the United States District Court for the District of Utah (Dkt. #108) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 21st day of August, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE